Nelson, J.,
delivered the opinion of the Court.
In the progress of this civil action, which was brought *435 by defendant in error for work and labor done by him as a mechanic, in building a house, etc., and in which the plaintiff in error claimed a set-off and a recoupment of damages for the defective and unworkmanlike manner in which the work was executed/ the defendant in error filed a petition for discovery under the provisions of the Code. The record states that “the plaintiff first proposed to read his bill of discovery and the defendant's answer thereto. Defendant objected to the reading of the bill, and insisted that plaintiff was only entitled to have? the answer read to the jury. The objection was overruled, but the Court instructed the jury at the same time, that the bill was not evidence before them; and the bill and answer, exceptions to answer, and amended answer, were all read; to all which the defendant excepted, but the exceptions were overruled. The Court, at the same time, instructed the jury that neither the bill nor exception to the answer were before them in the case.”
This action of the Circuit Court was erroneous. The Code, 3898, provides that “the answer of the party to the petition and interrogatories, is evidence on the trial of the suit, in the same manner and with the like effect, as an answer to a bill in equity for a discovery.”
In expounding the act of 1848, c. 177, which is similar to the provisions of the Code, it was said that the petition for discovery was no evidence for the party who filed it: Jones v. Davidson, 2 Sneed, 452, 453. In that case, the defendant had filed a petition for discovery against the plaintiff, who read bis answer in evidence to the jury, and the defendant then offered to read his petition, which was ruled out on the plaintiff's objection. *436 This practice was belcl"to be irregular, and it is said, in the opinion delivered by Judge Totten, that “in the trial at law, it was proper for the defendant to produce bis bill or petition for discovery, not as evidence for him, but in order to let in the respondent’s answer thereto, if he intended to use it as evidence. Its office then is to prove that such a bill had been filed, and to show the matters of fact to which the respondent was interrogated; for it is as to these that the answer must be limited and confined: lb., 453'.
As the Code makes no provision for the reading of the ■ petition to the jury, the correct practice is to submit it to the court, so that the court may determine, as a preliminary question of law, whether the petition has been properly filed, and the answer is responsive thereto; and if it is so adjudged, then the answer alone, which is evidence, should be submitted to the jury, unless it appears that the reading of the bill is necessary to explain the answer. If it appears that the answer can not be understood without reading the bill, or that the bill and answer are so connected that it is necessary to submit both to the jury, this should be done, but with the explanation that the matters alleged in the bill are not to be taken as true; otherwise, the party filing the petition would become a witness in his own cause, and although this ancient and well established objection has been obviated by recent legislation authorizing the parties, with but few exceptions, to become witnesses, yet, as this case was tried before the passage of the statute, it must be governed by the rules of law existing at the time of the trial. Although it has been held that the Circuit Court *437 may, at any time in the progress of the cause exclude, evidence erroneously admitted, from the jury, this rule should only be applied in cases where witnesses make inadmissible statements before they can be checked by counsel or restrained by the court, or where the evidence has been inadvertently received without objection at the time. But where objection is formally made to the introduction of the illegal testimony, and the Court has an opportunity to determine it in limine, the evidence, if illegal, should not be heard by the jury. No fact is better known to the members of the legal profession constantly engaged in the trial of causes and studying the operations of the human mind, than that where evidence has once been beard by jurors ignorant of law and not trained to discrimination, it is almost impossible to efface the impressions created by such illegal testimony; and we bold, that in all cases, where it is reasonably within the power of the Court to prevent the introduction of sucb evidence, the question should be disposed of before the witness makes bis illegal statement in the hearing of the jury. This is tlie more important in cases where written evidence is submitted, which the jurors always take with them when they retire from the bar. As a general rule, it is impossible to penetrate the secrets of the jury room, but judging from the revelations sometimes made by the jurors after a trial, it is not a rash presumption to suppose that the documentary evidence is often examined to ascertain what parts of it, at least, have been rejected; and such an examination rarely fails to impress the rejected evidence upon the memory, and to create an influence in the formation of jurors’ opinion. It is safest and best, that *438 the Judge, who is presumed to be familiar with the rules of evidence, should at once determine upon its admissibility. A week, or more, is often employed in the trial of a single cause, where .the facts are complicated and the witnesses numerous. If illegal testimony were admitted in such a case, on the first day of trial, it would be scarcely possible for the Judge, in such a case, to efface, by a single sentence, the impressions created in such a time upon the mind, not only by the evidence itself, but by meditations upon it in its relations to other proof.
In his Honor’s instruction to the jury, it is said: “As to the item in the defendant’s plea of set off, of an order drawn by plaintiff on Thomas Fisher, in favor of one Apple, and by him assigned, as the defendant alleges, to defendants, the law is this: “If it was presented to Fisher for payment, either by defendant or Apple, and he refused to pay, and plaintiff uvas notified of this refusal, then the defendant should be allowed the amount of said order; but if no demand is made of Fisher, or, if made, no notice was given Arendell of his refusal, (Fisher’s refusal,) to pay it, the defendant can nob be allowed the amount of said order. But if this demand was made, and notice given to Arendell of Fisher’s refusal to pay, defendant should be allowed this item.” It may be inferred from the record that this part of the charge refers to an order, without date, drawn by N. L. Apple on John L. Arendell, the defendant in error, for $10.60, which, it may be also inferred, was transferred or assigned to plaintiff in error by the following writing: “ Mr. John Arendell, you will please pay Thomas Lan *439 caster (the plaintiff in error) the ten dollars that you owe me. N. L. Apple.”
For the plaintiff in error, it is insisted that the part above- quoted of his Honor’s charge is- erroneous. But the Code, 1961, expressly provides that no holder of an order shall prosecute suit against the drawer before the order shall have been first protested for non-acceptance, and notice thereof given to the drawer before action brought; and the charge of his Honor was unquestionably correct, if the paper can be considered as negotiable, and if the plaintiff in error, as assignee, had a right to sue upon the order, or plead it by any way of set-off. It was declared by this Court, in construing the Act of 1762, c. 9, s. 4, which, in its provisions,, was very similar to the Code, 1961, 1962, that, by the common law, orders were not such evidences of debt as pould be sued upon, and that the drawer, in the event of non-payment, could only be sued upon his original liability; that the statute did not make the order negotiable, nor cause it to operate as an extinguishment; but simply gave an action upon it, which, when against the drawer,' must be upon demand, protest and notice. See Porter v. Dillahunty, 8 Hum., 575. As the Code, 1959, 1962, gives the action to the person to whom the money is made payable, and makes no provision for the assignment of the order, his Honor’s charge was clearly not erroneous as to the plaintiff in error; and we do not feel called upon to declare whether it was erroneous as to the defendant in error.
It seems, from the record, that Luther Betty executed a note, on the 6th of April, 1858, payable to H. C. Sad-ler, on or before the 24th of December next thereafter, *440 for one hundred dollars, “drawing interest from date;” tbat Sadler assigned the note to' plaintiff in error, wbo indorsed the same to defendant in error, in part payment of the amount due him; and there appears to have been a controversy between the parties as to whether Arendell took the note at a discount, or received it in payment at its nominal value.
Among other things, his Honor charged the jury that if there was no proof of contract between the parties as to the terms upon which the note was 'taken, “it would be governed by the principles applicable to, property taken, without a contract, upon a cash contract; that is, defendant should suffer such discount upon it as was reasonable or usual upon such paper at the time it may have been taken.” In this there was error. The note was for dollars, and is made negotiable by statute. It stands upon the footing of all commercial paper, and, in the absence of pi-oof to the contrary, is presumed to have been taken at its nominal value. Had the Court, without this addition to his charge, left it to i the jury to determine, from the proof, on what terms the note was taken by the contract, the charge would have been correct.
For the causes herein stated, let the judgment be reversed, and the cause remanded.